OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

March 5, 2001

Mr. Robert J. "Sam" Tessen, M.S.
Executive Director
Telecommunications Infrastructure
  Fund Board
1000 Red River, Suite E208
Austin, Texas 78701

Opinion No. JC-0350

Re: Whether the Telecommunications Infra-structure Fund Board has authority to spend appropriated funds to inform the general public of its activities and accomplishments and of the opportunities it provides (RQ-0292-JC)

Dear Mr. Tessen:

On behalf of the Board of the Telecommunications Infrastructure Fund (the "TIF" or the "Fund"), you ask whether the Board may spend appropriated funds to inform the public at large of the activities and accomplishments of the TIF as well as the opportunities available through it. You also ask whether the TIF Board may contract with a public relations firm for these purposes. We conclude that the TIF Board has authority to make information about its functions available to the public and may use appropriated funds for that purpose. It lacks authority to engage in an advertising or a public relations campaign regarding the TIF and may not use appropriated funds for that purpose. The TIF Board may not contract with a public relations firm.

Chapter 57, subchapter C of the Utilities Code, establishes the Telecommunications Infrastructure Fund and the TIF Board, which is responsible for administering the Fund. See TEX. UTIL. CODE ANN. §§ 57.043-.045 (Vernon 1998 & Supp. 2001). The Fund derives from an annual assessment on each telecommunications utility and each commercial mobile service provider, more popularly known as cellular telephone service provider,[1] doing business in the state. See id. § 57.043 (Vernon Supp. 2001). The state comptroller collects the assessments and deposits equal amounts to the credit of the two accounts in the Telecommunications Infrastructure Fund, the public schools account and the qualifying entities account, and the legislature appropriates money from the Fund to the TIF Board. See id. §§ 57.048 (assessment and collection procedure), .0485 (deposit of collections to accounts in fund); see also Act of May 26, 1999, 76th Leg., R.S., ch. 1589, art. III, 1999 Tex. Gen. Laws 5446, 5700 (appropriation to the Board). The TIF Board "shall use money in the public schools account" to award grants and loans to public schools for computer equipment and

---

[1] See TEX. UTIL. CODE ANN. § 57.042(3) (Vernon Supp. 2001) (defining "commercial mobile service provider" by reference to 47 U.S.C. § 332(d) (Supp. IV 1998)); see also 47 U.S.C. § 332 (1994 & Supp. IV 1998) (regulation of mobile services); MCI Cellular Tel. Co. v. Fed. Communications Comm'n, 738 F.2d 1322, 1323-24 (D.C. Cir. 1984) (explaining technology of cellular telephone service).

related items, and money in the qualifying entities account "for any purpose authorized by this subchapter," including distance learning, an information sharing program of a library, and telemedicine services. TEX. UTIL. CODE ANN. §§ 57.046, .047 (Vernon Supp. 2001).

Your first question is as follows:

> Does the Telecommunications Infrastructure Fund (TIF) Board have authority to expend state appropriated funds for the purpose of informing the general public at large, which will include all constituency groups, of the activities and accomplishments of, and opportunities available through the TIF? Providing such information may provide TIF with recognition and exposure throughout Texas and the nation.[2]

The "constituency groups" you refer to are the entities that may apply for a grant or loan from the TIF. *See* TEXAS TELECOMMUNICATIONS INFRASTRUCTURE FUND BD., MASTER PLAN, § IV(A) (2000), *available at* http://www.tifb.state.tx.us/masterplan/masterpln-analysis.htm.

Your first question is very general. You do not provide any information about the magnitude of your plan or the form in which you propose to disseminate information. We are unable to address the validity of a particular proposal, but we can discuss in general terms the TIF Board's authority to provide information to the public.

Funds appropriated to the TIF Board may be spent only for statutorily authorized purposes. Money in the Fund may be appropriated only for a use consistent with the purposes of Utilities Code subchapter C, chapter 57. *See* TEX. UTIL. CODE ANN. § 57.043(c) (Vernon Supp. 2001); *see also id.* § 57.045(d)(5) (TIF Board may accept a gift or grant and use it for the purposes of subchapter C); 1 TEX. ADMIN. CODE § 471.60 (2000) (gift, grants, and donations received by TIF Board shall be deposited in the state treasury). The current appropriation to the TIF Board reflects this limitation on using the money in the Fund. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 1589, art. III, 1999 Tex. Gen. Laws 5447, 5700. The TIF Board's entire appropriation comes from the Telecommunications Infrastructure Fund, and it is allocated for the provision of grants and loans, grant implementation, and indirect administration. *See id.* at 5700-01.

We will review the TIF Board's authority under chapter 57, subchapter C of the Utilities Code to determine whether it may inform the general public of the activities and accomplishments of and opportunities available through the TIF, for the purpose of providing the TIF with recognition and exposure throughout Texas and the nation. The TIF Board "shall administer the fund and the two accounts in the fund," and prepare an annual report showing the revenues deposited to the credit

---

[2]Letter from Robert J. "Sam" Tessen, M.S., Executive Director, Telecommunications Infrastructure Fund Board, to Honorable John Cornyn, Attorney General of Texas (Oct. 6, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

of the fund and summarizing the grants and loans made from each account. TEX. UTIL. CODE ANN. § 57.045(a),(b) (Vernon Supp. 2001). As already noted, the TIF Board is to award grants and loans for computer equipment in public schools and for distance learning, library information sharing programs, telemedicine services, and related purposes. *Id.* §§ 57.046, .047. The TIF Board "shall adopt a master plan for infrastructure development," covering a five-year period and describing "the project, timeline, and resource allocation targets for each year included in the plan." *Id.* § 57.0455.

The TIF Board has no express authority under chapter 57, subchapter C of the Utilities Code to engage in the activities referred to in your first question, that is, to inform the general public of the activities and accomplishments of, and opportunities available through the TIF, for the purpose of providing the TIF with recognition throughout Texas and the nation. There are, however, other sources of law that give the TIF Board some authority to provide information to the public consistently with the purposes of subchapter C. Section 2113.011 of the Government Code applies to publicity activities of a state agency, defined to include "a department, commission, board, office, or other entity in the executive branch of state government," as well as other statewide entities. TEX. GOV'T CODE ANN. § 2113.001(2)(A) (Vernon 2000). Section 2113.011(c) of the Government Code permits a state agency to disseminate information about its activities:

> Subject to Section 2113.107(d) [which applies to an executive agency head who is an elected officer], the executive head of a state agency who considers it necessary or in the public interest may issue through agency channels oral or written information relating to the activities or legal responsibilities of the agency. The information must be issued in the name of the state agency and include the name of the individual authorized to issue the information.

*Id.* § 2113.011(c); *see also id.* §§ 2113.011(a), .107(c) (state agency may not use appropriated money to publicize an individual officer or employee). The substance of the quoted provision was previously included in the general appropriations acts. *See, e.g.,* Act of May 29, 1997, 75th Leg., R.S., ch. 1452, art. XI, § 7, 1997 Tex. Gen. Laws 5535, 6357; Act of April 13, 1953, 53d Leg., R.S., ch. 81, art. VI, § 7, 1953 Tex. Gen. Laws 127, 345. It was one of many legislative riders formerly included in general appropriations acts that were codified as general law by the 76th Legislature. *See* Act of May 29, 1999, 76th Leg., R.S., ch. 1498, § 4, 1999 Tex. Gen. Laws 5153, 5155 (adopting Government Code, chapter 2113, an act relating to provisions that authorize, restrict, or prohibit expenditures by public entities).

This office has determined that a state agency has implied authority to publish a newsletter or bulletin at state expense concerning matters related to its statutory responsibilities. *See* Tex. Att'y Gen. Op. Nos. H-1272 (1978) at 2 (agency that administers statute on mobile home standards may have implied authority to inform consumers about such standards); M-1138 (1972) at 1 (Water Quality Board may print pamphlets and other appropriate materials, including bumper stickers, to distribute to the public). Section 2113.011 of the Government Code now expressly authorizes the executive head of a state agency to inform the public about the activities and legal responsibilities

of the agency. The TIF Board may use appropriated funds to provide information to the public pursuant to section 2113.011(c) of the Government Code.

Other statutes are relevant to a state agency's provision of information to the public. Section 2001.006 of the Government Code requires a state agency to make its rules and explanatory information available through a generally accessible Internet site. *See* TEX. GOV'T CODE ANN. § 2001.006 (Vernon 2000). Moreover, there is a legislative policy favoring a state agency making information about its functions available to the public, as illustrated by a provision found in the enabling statutes of many state agencies. The following section of the Utilities Code, which applies to the Public Utilities Commission, is typical of these:

> The commission shall prepare information of public interest describing the functions of the commission and the commission's procedures by which a complaint is filed with and resolved by the commission. The commission shall make the information available to the public and appropriate state agencies.

TEX. UTIL. CODE ANN. § 12.201(a) (Vernon 1998). *See also* TEX AGRIC. CODE ANN. § 12.026(a) (Vernon 1995 & Supp. 2000) (Texas Department of Agriculture); TEX. GOV'T CODE ANN. §§ 419.011(a) (Vernon 1998) (Texas Commission on Fire Protection), 481.012(a) (Vernon 1998) (Texas Department of Economic Development); TEX. PARKS & WILD. CODE ANN. § 11.0161(a) (Vernon Supp. 2001) (Texas Parks and Wildlife Commission).

These provisions derive from an "across-the board" recommendation developed by the Sunset Advisory Commission. *See* SUNSET ADVISORY COMM., GUIDE TO THE TEXAS SUNSET PROCESS (1999) at 4-5; *see also* TEX. GOV'T CODE ANN. ch. 325 (Vernon 1998 & Supp. 2001) (establishing Sunset Advisory Commission). The across-the-board recommendations are a set of standard recommendations applied to state agencies that go through sunset review. *See* SUNSET ADVISORY COMM., GUIDE TO THE TEXAS SUNSET PROCESS (1999) at 4-5. They reflect an effort by the legislature to prevent problems from occurring and are designed to ensure open, responsive, and effective government. *See id.* at 4; *see also id.* at 8 (summary of across-the-board recommendations that apply to all agencies). Although the quoted provision does not appear in the TIF statute, its inclusion in the across-the-board provisions suggests that the legislature wishes state agencies to keep the public informed about their functions. It is consistent with this legislative policy for the TIF Board to publish a newsletter or other similar document to inform members of the public, as well as potential applicants for grants and loans, of its programs and functions.

Chapter 2113 of the Government Code places certain limitations on a state agency's use of appropriated funds for publishing. Section 2113.107 of the Government Code bars a state agency from using appropriated funds to publish:

> a periodical or other publication the cost of which is not reimbursed through revenue attributable to its publication and sale if the publication is:
>
> > (1) intended for use by the general public;
> >
> > (2) generally informational, promotional, or educational; and
> >
> > (3) not essential to the achievement of a statutory objective of the agency.

TEX. GOV'T CODE ANN. § 2113.107(a) (Vernon 2000). Several kinds of publications are excepted from this restriction, including *Texas Highways* magazine, attorney general opinions, comptroller opinions, newsletters, compilations of statutes or rules, and "annual reports and other materials that are required by law and the content of which includes only topics provided by law." *Id.* § 2113.107(b).

A review of the law relevant to the TIF Board thus shows that it has some express authority to disseminate information describing its functions when this is in the public interest. Moreover, we believe it has implied authority to inform potential applicants for grants and loans of its programs. However, the TIF Board's question refers to communications that may provide the "TIF with recognition and exposure throughout Texas and the nation." Request Letter, *supra* note 2. The purpose of keeping the public informed about the functions of government does not necessarily encompass the goal of providing the TIF with statewide and nationwide recognition and exposure. This purpose seems to be broader than making information available to constituent entities and the general public, and it appears to involve promoting or advertising the TIF. In our opinion, the TIF Board lacks authority to promote or advertise the TIF, in distinction to making information about its functions available to the public.

Our conclusion is based in part on the legislature's decision to grant some state agencies express authority to promote or advertise a specific subject. *See, e.g.,* TEX. AGRIC. CODE ANN. § 47.001 (Vernon Supp. 2001) (Department of Agriculture may promote and advertise Texas oyster industry); TEX. GOV'T CODE ANN. §§ 443.027 (Vernon Supp. 2001) (State Preservation Board may publicize Capitol buildings and grounds), 445.005 (advertising of Bob Bullock State History museum), 481.006(a)(6) (Vernon 1998) (Texas Department of Economic Development may establish a promotion and marketing division), 481.021(a)(8) (Texas Department of Economic Development may sell advertisements), 485.004(a) (Music, Film, Television, and Multimedia Office shall promote the development of music, film, television, and multimedia industries in this state). *See generally* TEX. GOV'T CODE ANN. § 2113.107(e),(f) (Vernon 2000) (restrictions on using certain kinds of printing stock or issuing a publication with an average of more than one picture for each two pages not applicable to certain agencies or to a publication "designed to promote tourism or economic development"). Absent express legislative authority to engage in an advertising or public

relations campaign regarding the TIF, the TIF Board may not use appropriated funds for that purpose.

Your second question is as follows:

> If authority to expend appropriated funds is found for the above activities, is it limited to expenditure of funds for internal operations to accomplish these activities, or does it include engagement of the services of a public relations firm for such purposes?

Request Letter, *supra* note 2.

This question is based on the premise that the TIF Board has legal authority to engage in the communication activities referred to in the first question. In answering the first question, we have described some communications activities that the TIF Board has authority to engage in and some that are not authorized, but we have not been able to give a definitive "yes" or "no" answer to that question. Moreover, a decision as to whether the TIF Board may spend appropriated funds on a particular communications endeavor would require the investigation and resolution of fact questions, which cannot be done in an attorney general opinion. Thus, the premise upon which your second question is based has not been established. Section 2113.011 of the Government Code, however, provides an answer to your second question that is not contingent on a particular answer to your first question. Section 2113.011 provides that a state agency may not use appropriated money to:

> (1) maintain a publicity office or department;
>
> (2) employ an individual who has the title or duties of a public relations or press agent; or
>
> (3) pay a public relations agent or business.

TEX. GOV'T CODE ANN. § 2113.011(b) (Vernon 2000). In answer to your second question, the TIF Board is expressly barred from using appropriated funds to pay a public relations agent or business. Accordingly, the TIF Board may not spend its appropriated funds to engage the services of a public relations firm.

## S U M M A R Y

The Telecommunications Infrastructure Fund Board has authority to make information about its functions available to the public and may use appropriated funds for that purpose. It lacks authority to engage in an advertising or public relations campaign regarding the Fund and may not use appropriated funds for that purpose. The Telecommunications Infrastructure Fund Board may not use appropriated funds to contract with a public relations firm.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General - Opinion Committee